**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

ELIOT CANICK, on behalf of himself and a class of similarly situated persons,

Plaintiff,

vs.

ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA,

Defendant.

Case No. 0:25-cv-03141

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Eliot Canick ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Allianz Life Insurance Company of North America ("Allianz" or "Defendant") seeking monetary damages, restitution, and/or injunctive relief for the proposed Class and Subclasses, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of counsel, and personal knowledge or facts that are a matter of public record.

## I. INTRODUCTION

1. The release, disclosure, and publication of sensitive, private data can be devasting. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have a grave consequences for victims for years after the

[1] Dave Maxfield & Bill Latham, Data Breaches: Perspectives from Both Sides of the Wall, S.C. Lawyer (May 2014).

actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information.

2. Minneapolis, Minnesota based Defendant Allianz is a wholly owned subsidiary of the German multinational financial services company, Allianz SE, headquartered in Munich. Allianz markets itself as "a leading provider of financial and retirement solutions"[2] with a $124,000,000,000.00 portfolio.[3] The Minnesota Department of Commerce Insurance Supplement detailed that Allianz Life had $177,865,640,835.00 in Assets.[4] Allianz provides financial services including annuities and life insurance.

3. On or about July 16, 2025, Defendant Allianz experienced a cybersecurity incident involving unauthorized access to the majority of its 1.4 million US customers, financial professionals, and select employees (the "Data Breach").[5] On July 17, 2025, Allianz became aware of the Data Breach.[6] On Saturday July 26, 2025, Allianz notified the

---

[2] *About Allianz*, https://www.allianzlife.com/about (last visited July 28, 2025).
[3] *Why Allianz*, https://www.allianzlife.com/why-allianz (last visited July 28, 2025).
[4] MINNESOTA DEPARTMENT OF COMMERCE, ANNUAL INSURANCE SUPPLEMENT, https://mn.gov/commerce-stat/pdfs/Annsup2023.pdf (last visited July 29, 2025).
[5] Lawrence Abrams, *Allianz Life confirms data breach impacts majority of 1.4 million customers*, BLEEPING COMPUTER (July 26, 2025), https://www.bleepingcomputer.com/news/security/allianz-life-confirms-data-breach-impacts-majority-of-14-million-customers/ (last visited July 28, 2025).
[6] OFFICE OF THE MAIN ATTORNEY GENERAL, DATA BREACH NOTIFICATION FOR ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/0446bff3-a013-43ed-82fa-bca6bb157de1.html (last visited July 29, 2025).

Office of the Maine Attorney General as required by law.[7] Allianz later informed the public that the breach occurred due to a "threat actor gain[ing] access to a third-party, cloud based CRM system."[8]

4. Despite knowing how valuable customer information is, Defendant failed to adequately protect Plaintiff's and Class Members' Personally Identifiable Information ("PII"). This PII was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect customers' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' PII because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach, including Plaintiff and class members, will remain for their respective lifetimes.

5. As a result of the Data Breach, through which their PII was compromised, disclosed, and obtained by unauthorized third parties, Plaintiff and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiff and the other Class Members will incur ongoing out-of-pocket costs (*e.g.*, purchasing credit monitoring

---

[7] Sara Chernikoff, *A majority of customers' personal information was stolen in data breach at Allianz life*, USA TODAY (July 28, 2025), https://www.usatoday.com/story/tech/2025/07/28/us-customers-data-stolen-cyberattack-allianz-life/85406949007/ (last visited July 29, 2025).

[8] *Id.*

services, credit freezes, credit reports, or other protective measures to deter and detect identity theft).

6. By this Complaint, Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose PII was accessed during the Data Breach.

## II. PARTIES

### A. Plaintiff Eliot Canick

7. Plaintiff Eliot Canick is a citizen of San Francisco, California.

8. Upon information and belief, Allianz Received Plaintiff Eliot Canick's PII from Plaintiff's purchase of an Allianz Life annuity in 2023. In return for receipt of this annuity, Plaintiff Canick provided Allianz with extensive and sensitive PII at least including name, address, phone number, email address, and Social Security number ("SSN").

### B. Defendant

9. Defendant Allianz Life Insurance Company of North America is a corporation with a principal place of business at 5701 Golden Hills Drive, Minneapolis, MN 55416-1297.

## III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, et seq., because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and

costs. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

11. The Court has jurisdiction over Defendant because Allianz maintains its principal place of business in this District, has sufficient minimum contacts with this District, and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

12. Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Allianz's principal place of business is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## IV. FACTUAL BACKGROUND

### A. The Data Breach Occurred Because Allianz Failed to Protect Private Data which the Company Obtained from Its Clients.

13. Upon information and belief, Allianz obtained Plaintiff and Class Members' PII in exchange for provision of its life insurance and financial services and products.

14. Allianz promises its customers and the public that it "treat[s] the personal information furnish[ed to Defendant] with the utmost respect."[9] To protect this sensitive customer Personally Identifiable Information ("PII"), Allianz claims that it "uses security controls, including encryption, firewalls, advanced malware detection, and the concept of least privilege for access management."[10] Allianz further admits that it collects and shares

---

[9] https://www.allianzlife.com/Privacy (last visited July 29, 2025).
[10] Allianz, *Privacy Notice Allianz Life of North America* (July 2024), https://www.allianzlife.com/-

PII including "Social Security number[s] and income, account balances and payment history, transaction history and insurance claim history."[11]

15. Notwithstanding these security promises, on July 16, 2025, Allianz experienced a data breach that publicly exposed Plaintiff and class members' PII.[12] A group of threat actors, ShinyHunters, breached Defendant's security measures through a third-party customer relationship management ("CRM") system used by Defendant.[13] The Data Breach was so extensive that it impacted a majority of Defendant's 1.4 million customers.[14] Defendant's official disclosure admitted that compromised PII includes "full names, social security numbers, policy and contract numbers, dates of birth, mailing addresses, phone numbers, and email addresses."[15]

---

/media/Files/Global/documents/2016/05/09/17/32/M40018.pdf (last visited July 30, 2025).

[11] *Id.*

[12] Lawrence Abrams, *Allianz Life confirms data breach impacts majority of 1.4 million customers*, Bleeping Computer (July 26, 2025), https://www.bleepingcomputer.com/news/security/allianz-life-confirms-data-breach-impacts-majority-of-14-million-customers/ (last visited July 28, 2025).

[13] *Id.*

[14] Zack Whittaker, *Allianz Life says 'majority' of customers' personal data stolen in cyberattack*, TECHCRUNCH (July 26, 2025), https://techcrunch.com/2025/07/26/allianz-life-says-majority-of-customers-personal-data-stolen-in-cyberattack/ (last visited July 28, 2025).

[15] *Allianz Life Data Breach 2025: Timeline, Impact and Analysis*, CYBER MANAGEMENT ALLIANCE (July 28, 2025), https://www.cm-alliance.com/cybersecurity-blog/allianz-life-data-breach-2025-timeline-impact-and-analysis (last visited July 30, 2025).

16. Defendant's disclosure to the Office of the Maine Attorney General states that they began providing written notification to affected individuals beginning August 1, 2025.[16]

17. Defendant is familiar with its obligations to protect sensitive customer information. Allianz claims that they safeguard consumer "information in compliance with federal and state laws by implementing industry-standard administrative, physical, and technical measures to secure our websites and the data shared through them."[17]

18. Defendant's parent company, Allianz SE, has repeatedly acknowledged the risk of data breaches and the importance of cybersecurity. Allianz SE's 2025 Risk Barometer identified cyber incidents as "the top global risk for 2025… It is the fourth year in a row that cyber is ranked #1."[18] Allianz SE further stated that "for many companies, cyber risk, exacerbated by rapid development of AI, is the big risk overriding everything else…. Cyber is the top risk across North and South America, in Europe and Africa."[19] Defendant was fully aware of the threat posed by cyber security breaches and yet still implemented insufficient privacy measures to protect Plaintiff and Class Members sensitive PII.

---

[16] OFFICE OF THE MAIN ATTORNEY GENERAL, DATA BREACH NOTIFICATION FOR ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/0446bff3-a013-43ed-82fa-bca6bb157de1.html (last visited July 29, 2025).

[17] Allianz, *Online Privacy Policy*, https://www.allianzlife.com/Privacy#OnlinePrivacyPolicy (last visited July 30, 2025).

[18] Allianz Commercial, *Allianz Risk Barometer* (Jan. 2025), https://commercial.allianz.com/content/dam/onemarketing/commercial/commercial/reports/Allianz-Risk-Barometer-2025.pdf (last visited July 30, 2025).

[19] *Id.*

19. Plaintiff and Class Members had the reasonable expectation that Defendant would comply with its obligations related to their PII. Defendant owed Plaintiff and Class Members a duty to provide reasonable security, consistent with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected their PII.

20. Defendant failed to comply with its obligations, resulting in the Data Breach. Class Members now face years of constant surveillance of their financial and personal records.

21. Allianz has provided no assurances that all personal data has been either recovered or destroyed or that the company has sufficiently improved its data security practices to the extent necessary to avoid a future similar intrusion into its systems.

**B. Defendant Failed to Comply with Regulatory Guidance and Industry Standard Cybersecurity Practices.**

22. Defendant's data security failure stems from its failure to comply with state and federal laws and requirements as well as industry standards governing the protection of Private Information.

23. At least 24 states have enacted laws addressing data security practices that require that businesses that own, license or maintain PII to implement and maintain reasonable security procedures and practices and to protect PII from unauthorized access.

24. Defendant also failed to comply with Federal Trade Commission ("FTC") guidance on protecting PII and industry-standard cybersecurity practices. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce,"

including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendant. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

25. The FTC recommends:

(a) limiting access to customer information to employees who have a business reason to see it;
(b) keeping customer information in encrypted files provides better protection in case of theft;
(c) maintaining up-to-date and appropriate programs and controls to prevent unauthorized access to customer information;
(d) using appropriate oversight or audit procedures to detect the improper disclosure or theft of customer information;
(e) monitoring both in- and out-bound transfers of information for indications of a compromise, such as unexpectedly large amounts of data being transmitted from your system to an unknown user; and,
(f) monitoring activity logs for signs of unauthorized access to customer information.[20]

26. The FTC has also issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

27. In 2016, the FTC updated its publication, Protecting PII: A Guide for Business, which established guidelines for fundamental data security principles and

[20] Federal Trade Commission, *Financial Institutions and Customer Information: Complying with the Safeguards Rule*, https://www.ftc.gov/tips-advice/business-center/guidance/financial-institutions-customer-information-complying (last visited June 13, 2024).

practices for business.[21] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

28. The FTC recommends that businesses delete payment card information after the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

29. The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

---

[21] Federal Trade Commission, *Protecting PII: A Guide for Business*, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf (last visited June 13, 2024).

30. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

31. The FTC has interpreted Section 5 of the FTC Act to encompass failures to appropriately store and maintain personal data.

32. According to the Federal Bureau of Investigation (FBI), phishing schemes designed to induce individuals to reveal personal information, such as network passwords, were the most common type of cybercrime in 2020, with such incidents nearly doubling in frequency between 2019 and 2020.[22] According to Verizon's 2021 Data Breach Investigations Report, 43% of breaches stemmed from phishing and/or pretexting schemes.[23]

33. Defendant was aware of its obligations to protect customers' PII, PHI and privacy before and during the Data Breach, yet failed to take reasonable steps to protect customers from unauthorized access. In this case, Defendant was at all times fully aware of the obligation to protect the Private Information of Defendant's customers because of

[22] FBI, *2020 Internet Crime Report*, https://www.ic3.gov/Media/PDF/AnnualReport/2020_IC3Report.pdf (last visited July 30, 2025).

[23] Verizon, *2021 DBIR Master's Guide*, https://www.verizon.com/business/resources/reports/dbir/2021/masters-guide/ (subscription required) (last visited June 13, 2024).

its status as a leader in life insurance and annuity provision. Defendant was also aware of the significant repercussions if it failed to protect consumer data because Defendant collected Private Information from millions of individuals and knew that this Private Information, if hacked, would result in injury to individuals, including Plaintiff and Class Members.

34. Based upon the known details of the Data Breach and how it occurred, Defendant also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to, proper firewall configuration, network segmentation, secure credential storage, rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

### C. The Data Breach Puts Class Members at Increased Risk of Fraud and Identity Theft.

35. An identity thief uses victims' PII, such as name, address, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from immigration fraud, obtaining a driver's license or identification card, obtaining government benefits, and filing fraudulent tax returns to obtain tax refunds.

36. Identity thieves can use a victim's PII to open new financial accounts, incur charges in the victim's name, take out loans in the victim's name, and incur charges on existing accounts of the victim. Plaintiff and Class Members' finances are now at risk due to the Data Breach.

37. Identity theft is the most common consequence of a data breach—118.6 million individuals had their PII exposed through data breaches in 2020.[24] Consumers lost more than $56 billion to identity theft and fraud in 2020, and over 54% of identity theft victims reported emotional distress.[25] Victims of identity theft can experience financial damage as thieves run up debts into the tens of thousands. These victims can have their credit history destroyed impairing their ability to obtain a loan, a mortgage, or even to lease housing. Victims of identity theft can experience substantial legal complications due to breaches. These risks and vulnerabilities are ongoing.

38. Plaintiff and members of the Class are now in the position of having to take steps to mitigate these damages caused by the Data Breach. Once the use of compromised non-financial PII is detected, the emotional and economic consequences to the victims are significant. Studies done by the ID Theft Resource Center, a non-profit organization, found that victims of identity theft had marked increased fear for personal financial security. The report attributes this to more people having been victims before, contributing to greater awareness and understanding that they may suffer long term consequences from this type of crime.[26]

---

[24] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?,* Identityforce (Apr. 14, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics (last visited June 16, 2025).
[25] *Id.*
[26] *Identity Theft: The Aftermath 2013*, Identity Theft Resource Center, https://idtheftcenter.org/wp-content/uploads/2021/09/Aftermath2013.pdf (last visited June 16, 2025).

39. Defendant failed to protect and safeguard Plaintiff and Class Members' private information, in fact Defendant failed to adhere to even its most basic obligations. As a result, Plaintiff and Class Members have suffered or will suffer actual injury, including loss of privacy, costs, and loss of time.

## V. CLASS ALLEGATIONS

40. Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> **Nationwide Class:** All natural persons in the United States whose Personally Identifiable Information was compromised as a result of the Data Breach.
>
> **California Class:** All natural persons in California whose Personally Identifiable Information was compromised as a result of the Data Breach.

41. Excluded from the Class is Defendant, any entity in which a Defendant has a controlling interest, any of the officers or directors of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, and any Judge to whom this case is assigned, and his or her immediate family.

42. The definition of the Class may be further modified or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

43. **Numerosity and Ascertainability:** Plaintiff does not know the exact size of the Class or the identity of the Class Members because such information is in the exclusive control of Defendant. Nevertheless, based on published reports, the Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class

action will benefit the parties and the Court. The names, phone numbers, and addresses of Class Members are identifiable through documents maintained by Defendant.

44. **Commonality and Predominance:** This action involves common questions of law and fact as to all members of the class, which predominate over any question solely affecting individual Class Members. Common questions of law and fact include, but are not limited to, the following:

(a) Whether Defendant engaged in the conduct alleged herein;

(b) Whether Defendant had a legal duty to use reasonable security measures to protect Plaintiff and Class Members' PII;

(c) Whether Defendant's failure to implement effective security measures to protect Class Member Private Information was negligent;

(d) Whether Plaintiff and Class Members are entitled to injunctive relief;

(e) Whether Plaintiff and Class Members are entitled to declaratory relief; and

(f) Whether, as a result of Defendant's conduct, Plaintiff and the Class are entitled to damages and equitable relief.

45. **Typicality:** Plaintiff's claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendant's substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other members of the Class that he seeks to represent, and there are no defenses that are unique to Plaintiff. Plaintiff and Class Member claims and injuries arise from the same facts and are based on the same law.

46. **Adequacy:** Plaintiff is an adequate Class Representatives because his interests do not conflict with the interests of other Class Members he seeks to represent; Plaintiff has retained competent counsel that is experienced in complex class action litigation; and Plaintiff intends to vigorously prosecute this action. The interests of Class Members will be fairly and adequately protected by Plaintiff and his counsel.

47. **Superiority:** A class action is superior to other available methods for fair and efficient adjudication of this controversy. No unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Class Members are relatively small compared to the expense required to individually litigate their claims against Defendant, so, absent class-wide adjudication, it would be virtually impossible for Class Members to seek individual redress against Defendant's wrongful conduct.

## VI. CAUSES OF ACTION

### COUNT ONE
### NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class)

48. Plaintiff incorporates paragraphs 1 through 47 as if fully set forth herein.

49. As part of its business, Defendant solicited, collected, and maintained Plaintiff and Class Members' PII.

50. Defendant's business depended upon collecting Plaintiff and Class Members' PII because the financial services and products they provide requires the use and maintenance of Plaintiff and Class Members' PII.

51. Defendant owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risks of harm to Plaintiff and Class Members collecting, employing, maintaining, storing, and managing PII.

52. Upon collecting, accepting custody of, and storing Plaintiff and Class Members' PII, Defendant undertook and owed a duty to Plaintiff and Class safeguard and protect their PII using reliable, proven, effective, and safe methods for doing so.

53. Defendant was fully aware that Plaintiff and Class Members' PII was sensitive, that Plaintiff and Class Members would suffer extensive and myriad injuries if their PII was wrongfully disclosed, and that providing sufficient security for the collected PII was of critical importance.

54. Plaintiff and Class Members were foreseeable victims of any insufficient security protocols and practices by Allianz. Allianz had a duty of care to not subject Plaintiff and Class Members to an unreasonable risk of injury. Defendant knew that cyber criminals frequently use cyberattacks to steal sensitive PII and exploit it for financial gain to the substantial detriment of the individuals to whom the PII pertains.

55. Defendant's duty to Plaintiff and Class Members extended to protecting them from the foreseeable risk of third parties' criminal conduct.

56. Defendant's duties to Plaintiff and Class Members also included:

(a) using reasonable and adequate technology and security procedures to promptly detect security incidents, data breaches, or unauthorized access into servers, email systems, and company networks;

(b) safeguarding Plaintiff and Class Members' PII by employing adequate and reasonable security practices and technology; and

(c) using reasonable care in creating, integrating, maintaining, and testing Defendant's email accounts, networks, third-party CRM providers, policies and procedures, employee trainings, and security protocols, to ensure that Plaintiff and Class Members' PII was safe and reasonably secure from theft, publication, or disclosure.

57. Only Allianz was capable of securing its own systems and programs and making sure that the security measures employed were sufficient to safeguard Plaintiff and Class Members' PII.

58. Allianz breached its duty of care because it failed to adequately safeguard the PII belonging to Plaintiff and Class Members. Defendant's breaches included, but were not limited to:

(a) Failing to adequately train and test its employees on sufficiently and safely sending and storing PII;
(b) Failing to reasonably implement protocols for promptly detecting security incidents, data breaches, or unauthorized access to sensitive data, including Plaintiff and Class Members' PII;
(c) Failing to use adequate and reasonable security systems and policies for safeguarding the PII it possessed;
(d) Failing to train its employees to avoid phishing emails and test employees' conduct upon receipt of suspicious emails;
(e) Failing to enforce security policies for protecting Plaintiff and Class Members' PII;
(f) Failing to use reasonable and adequate industry standard security systems and devices for emails, including SPAM filters, DMARC compliance, and/or Sender Policy Framework compliance;
(g) Failing to ensure that Allianz did not maintain or keep PII on its systems, servers, and devices for longer than necessary;
(h) Failing to use reasonable care in protecting, maintaining, using, and erasing the PII that Allianz possessed.

59. Allianz's failure to fulfill these duties was reckless, grossly negligent, and wrongful considering the foreseeable and substantial risks that such a failure would entail.

60. Plaintiff and Class Members have already suffered injuries and are at imminent risk of additional injuries as a foreseeable and proximate result of Defendant's negligence.

61. Plaintiff and Class Members' PII has been publicly exposed as a direct result of Defendant's breach of its duty to use reasonable care to adequately protect and secure Plaintiff and Class Members' PII.

62. Plaintiff and Class Members have suffered and will continue to suffer damages which are the direct and proximate result of Defendant's negligent conduct. These damages include but are not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of their PII.

63. Defendant's wrongful acts and omissions constituted and continue to constitute common law negligence.

64. Plaintiff and Class Members are accordingly entitled to damages in an amount to be proven at trial.

**COUNT TWO**
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiff and the Nationwide Class)**

65. Plaintiff incorporates paragraphs 1 through 47 as if fully set forth herein.

66. The FTC Act prohibits "unfair practices in or affecting commerce."[27] It imposed and continues to impose on Defendant a duty to Plaintiff and Class Members to provide adequate and fair practices, computer systems, and data security for safeguarding Plaintiff and Class Members' PII. In enforcement actions, the FTC has treated businesses' failure to employ reasonable measures to adequately secure consumer's confidential data as an unfair act or practice prohibited by Section 5 of the FTC Act.[28]

67. Defendant's failure to use reasonable and appropriate methods to guard Plaintiff and Class Members' PII against unauthorized access is an unfair act or practice that Section 5 of the FTC Act prohibits.

68. Defendant violated the FTC Act by failing to comply with industry-standard data security practices, as described above.

69. Defendant's collection and maintenance of Plaintiff and Class Members' PII were actions central to its business and affected commerce.

---

[27] 15 U.S.C. § 45(a).
[28] *See, e.g.*, Complaint, *Drizly, LLC and James Cory Rellas*, FTC Matter No. 2023185 (Oct. 24, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/202-3185-Drizly-Complaint.pdf (last visited July 16, 2025); Complaint, *Fandango*, FTC Matter No. 1323089 (Aug. 19 2014), https://www.ftc.gov/system/files/documents/cases/140819fandangocmpt.pdf (last visited July 16, 2025).

70. The class of people that the FTC Act is intended to protect include Plaintiff and Class Members.

71. The injuries that Plaintiff and Class Members suffered and continue to suffer and that resulted from the data breach are the types of injuries that the FTC Act was intended to prevent.

72. As a direct and proximate result of Defendant's negligence and violations of the FTC Act and the Unfair Competition Law ("UCL") Plaintiff and Class Members have suffered and will continue to suffer injury, which include but are not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of their PII.

73. Plaintiff and the Class are accordingly entitled to damages in amounts to be proven at trial.

**<u>COUNT THREE</u>**
**GROSS NEGLIGENCE**
**(On Behalf of Plaintiff and the Nationwide Class)**

74. Plaintiff incorporates paragraphs 1 through 47 as if fully set forth herein.

75. Plaintiff and Class Members entrusted Allianz with highly-sensitive and inherently personal private data subject to laws on confidentiality and unfair trade practices.

76. In collecting, obtaining and storing Plaintiff and Class Members' PII, Allianz owed a duty of reasonable care in safeguarding the PII.

77. Allianz's networks, systems, protocols, policies, procedures and practices were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff and Class Members' PII were secured from unauthorized access.

78. Allianz's networks, systems, protocols, policies, procedures and practices were not reasonable given the sensitivity of the Plaintiff and Class Members' private data.

79. Allianz did not comply with state and federal laws and rules concerning the use of safekeeping of this private data.

80. Despite knowing its networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff and Class Members' PII were secured from unauthorized access, Allianz ignored the inadequacies and was oblivious to the risk of unauthorized access it had created.

81. Allianz's behavior establishes facts evidencing a reckless disregard for Plaintiff and Class Members' rights.

82. Allianz was, therefore, grossly negligent.

83. Allianz's negligence is directly linked to Plaintiff and Class Members' injuries. As a result of Allianz's reckless disregard for Plaintiff and Class Members' rights

by failing to secure their PII, despite knowing its networks, systems, protocols, policies, procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiff and Class Members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of their PII.

84. The harm to Plaintiff and the Class Members was a proximate, reasonably foreseeable result of Allianz's breaches of the applicable laws and regulations.

85. Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT FOUR
## BREACH OF IMPLIED CONTRACTS
## (On Behalf of Plaintiff and the Nationwide Class)

86. Plaintiff incorporates paragraphs 1 through 47 as though fully set forth herein.

87. Plaintiff and Class Members provided their PII to Allianz in order to obtain financial products and services such as life insurance and annuities.

88. By providing their PII, and upon Allianz's acceptance of such information, Plaintiff and Class Members on one hand, and Defendant on the other hand, entered into

implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby Allianz was obligated to take reasonable steps to secure and safeguard that information.

89. Allianz had an implied duty of good faith to ensure that the PII of Plaintiff and Class Members in its possession was only used in accordance with its contractual obligations.

90. Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff and Class Members' PII and to comply with industry standards and state laws and regulations for the security of this information, and Allianz expressly assented to these terms in its Privacy Policy.[29]

91. Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying for the services provided by Defendant and/or providing the PII required by Defendant.

92. Allianz breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff and Class Members' PII, resulting in the Data Breach. Allianz unreasonably interfered with the contract benefits owed to Plaintiff and Class Members.

---

[29] "To protect your personal information from unauthorized access and use, we use security measures that comply with federal and state law." Allianz, *Privacy Notice Allianz Life of North America* (July 2024) https://www.allianzlife.com/-/media/Files/Global/documents/2016/05/09/17/32/M40018.pdf (last visited July 30, 2025).

93. Further, on information and belief, Allianz has not yet provided Data Breach notifications to some affected Class Members who may already by victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII that they provided to Allianz. These Class Members are unaware of the potential source for the compromise of their PII.

94. The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

95. As a result of Allianz's conduct, Plaintiff and Class Members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

96. Neither Plaintiff, nor Class Members, nor any reasonable person would have provided their PII to Allianz had it disclosed that its security was inadequate or that it did not adhere to industry-standard security measures.

97. As a result of Defendant's breach, Plaintiff and the Class Members have suffered actual damages resulting from theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

98. As a result of Defendant's breach, Plaintiff and the Class Members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to

protect themselves from the loss of their PII. As a result, Plaintiff and the Class Members have suffered actual identity theft and the inability to control their PII.

99. Accordingly, Plaintiff and Class Members have been injured as a result of Allianz's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## <u>COUNT FIVE</u>
## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING
## (On Behalf of Plaintiff and the Nationwide Class)

100. Plaintiff incorporates paragraphs 1 through 47 as though fully set forth herein.

101. Plaintiff and Class Members were the intended beneficiaries of contracts with Defendant.

102. These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations—both explicit and fairly implied—and would not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts. These included the covenants that Defendant would act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff and Class Members' PII and to comply with industry standards and federal and state laws and regulations for the security of this information.

103. Defendant entered into special relationships with Plaintiff and Class Members, who entrusted their confidential PII to Defendant.

104. Defendant promised and was obligated to protect the confidentiality of Plaintiff and Class Members' PII from disclosure to unauthorized third parties. Defendant breached the covenant of good faith and fair dealing by failing to take adequate measures to protect the confidentiality of Plaintiff and Class Members' PII, which resulted in the Data Breach. Defendant unreasonably interfered with the contract benefits owed to Plaintiff and Class Members by failing to implement reasonable and adequate security measures consistent with industry standards to protect and limit access to the PII of Plaintiff and the Class in Defendant's possession.

105. Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying for the services they received and entrusting Defendant with the confidential PII.

106. As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members did not receive the full benefit of their bargain—services with reasonable data privacy—and instead received services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts. Plaintiff and Class Members have suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class Members paid for, and the services they received without reasonable data privacy.

107. As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered actual damages resulting from the theft of their PII and remain at imminent risk of suffering additional damages in the future.

108. As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered actual damages resulting from their attempt to ameliorate the effect of the Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII.

109. As a direct and proximate cause of Defendant's conduct, Plaintiff and Class Members suffered injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendant from its conduct. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law.

## COUNT SIX
## UNJUST ENRICHMENT
## (On Behalf of Plaintiff and the Nationwide Class)

110. Plaintiff incorporates paragraphs 1 through 47 as though fully set forth herein.

111. Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for services.

112. Allianz collected, maintained, and stored the PII of Plaintiff and Class Members and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiff and Class Members. The collection, maintenance, and storage of Plaintiff and Class Members' PII was a central part of Allianz's business and ability to gain profits.

113. The money that Defendant directly or indirectly received from Plaintiff and Class Members should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendant failed to implement—or

adequately implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

114. As a result of Defendant's failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class Members paid for, and the services they received without reasonable data privacy.

115. Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members because Defendant failed to implement the data management and security measures that are mandated by industry standards and that Plaintiff and Class Members paid for.

116. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by Defendant. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendant traceable to Plaintiff and the Class.

## COUNT SEVEN
## DECLARATORY JUDGMENT
## (On Behalf of Plaintiff and the Nationwide Class)

117. Plaintiff incorporates paragraphs 1 through 47 as though fully set forth herein.

118. Plaintiff and the Class have stated claims against Defendant based on negligence, negligence per se, gross negligence, breach of implied contracts, breach of implied duty of good faith and fair dealing, and unjust enrichment.

119. Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII of Plaintiff and the Class, as evidenced by the Data Breach.

120. As a result of the Data Breach, Defendant's system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII of Plaintiff and the Class going forward.

121. Plaintiff seeks a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiff and the Class. Specifically, Plaintiff and the Class seek a declaration that Defendant's existing security measures do not comply with its obligations, and that Defendant must implement and maintain reasonable security measures on behalf of Plaintiff and the Class to comply with its data security obligations.

**COUNT EIGHT**
**CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")**
**(On Behalf of Plaintiff and the California Class)**

122. Plaintiff, individually and on behalf of the California Subclass, incorporates paragraphs 1 through 47 as though fully set forth herein.

123. The UCL prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the UCL and relevant case law. By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendant engaged in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the UCL.

124. In the course of conducting its business, Defendant committed "unlawful" business practices by, *inter alia*, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and California Subclass members' Personal Information, and by violating the statutory and common law alleged herein. Plaintiff and California Subclass Members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

125. Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair" business acts and practices in violation of the UCL in that Defendant's wrongful conduct is substantially injurious to consumers, offends legislatively-declared public policy, and is immoral, unethical, oppressive, and unscrupulous. Defendant's practices are also contrary to legislatively declared and public policies that seek to protect Personal Information and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws such as the Article I, Section 1 of the California Constitution (California's constitutional right to privacy) and the Federal Trade Commission Act ("FTC Act") (15 U.S.C. § 45). The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in the above-described wrongful conduct.

126. As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the UCL, Plaintiff and California Subclass Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and identity fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their Personal Information, (iv) statutory damages, (v) deprivation of the value of their Personal Information, for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring their credit, monitoring financial accounts, and mitigating damages.

127. Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiff, therefore, on behalf of themselves individually, California Subclass Members, and the general public, also seeks restitution and an injunction prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to modify its corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to safeguard and protect the Personal Information entrusted to them, as well as all other relief the Court deems appropriate, consistent with Bus. & Prof. Code § 17203.

## COUNT EIGHT
## CALIFORNIA CONSUMER PRIVACY ACT
## Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")
## (On Behalf of Plaintiff and the California Class)

128. Plaintiff, individually and on behalf of the California Subclass, incorporates paragraphs 1 through 47 as though fully set forth herein.

129. The CCPA was enacted to protect consumers' sensitive information from collection and use by businesses without appropriate notice and consent.

130. The CCPA imposes a duty on entities doing business in the State of California to implement and maintain reasonably security procedures and practices as appropriate given the nature of the sensitive information.

131. Allianz collected Plaintiff's and California Subclass Members' PII for the purpose of providing life insurance, annuities, and financial services to California consumers.

132. Through the conduct complained of herein, Allianz violated the CCPA by subjecting Plaintiff's and California Subclass Members' PII to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of its duties to implement and maintain reasonable security procedures and practices appropriate to the nature and protection of that information. Cal. Civ. Code § 1798.150(a).

133. In compliance with Cal. Civ. Code §1798.150(b), on August 6, 2025, prior to the filing of this Complaint, Allianz was served notice of the California Subclass's claim for the CCPA violations alleged herein by certified mail, return receipt requested. To date, Allianz has failed to cure its CCPA violations.

134. Plaintiff and the California Subclass are entitled to damages, including statutory damages, due to Defendant's CCPA violations. Ca. Civ. Code § 1798.150.

## VII. PRAYER FOR RELIEF

135. Plaintiff, on behalf of himself and on behalf of the proposed Classes, requests that the Court:

(a) Certify this case as a class action, appoint Plaintiff as class representative, and appoint Plaintiff's Counsel as Class Counsel for Plaintiff to represent the Class.

(b) Find that Allianz breached its duties to safeguard and protect the PII of Plaintiff and Class Members that was compromised in the Data Breach;

(c) Award Plaintiff and Class Members appropriate relief, including actual and statutory damages, restitution and disgorgement;

(d) Award equitable, injunctive and declaratory relief as may be appropriate;

(e) Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

(f) Award pre-judgment and post-judgment interest as prescribed by law; and

(g) Grant additional legal or equitable relief as this Court may find just and proper.

## VIII. JURY TRIAL DEMAND

A jury trial is demanded by Plaintiff on all claims so triable.

Dated: August 6, 2025

Respectfully submitted,

By: */s/ Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
Shashi K. Gowda (#401809)
Frances Mahoney-Mosedale (#402741)
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
sgowda@gustafsongluek.com
fmahoneymosedale@gustafsongluek.com

Thomas E. Loeser (*pro hac vice* forthcoming)
Jacob M. Alhadeff (*pro hac vice* forthcoming)
**COTCHETT, PITRE & McCARTHY LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
Tel: (206) 802-1272
tloeser@cpmlegal.com
jalhadeff@cpmlegal.com

*Attorneys for Plaintiff and the Proposed Class*